Good morning, Your Honors. Laboni Hawk on behalf of Asian Americans Advancing Justice, Los Angeles, for Plaintiffs Naji Hamdan, Hossam Hemdan, and the ACLU at Southern California. I would like to reserve five minutes for rebuttal. We filed this Freedom of Information Act request on behalf of an American citizen who was detained and tortured at a black site in the United Arab Emirates. We seek to know what information his government has about this horrific ordeal. Through FOIA, Congress granted the courts with a central role in ensuring FOIA's purpose of open government. But the district court here failed to faithfully carry out its role, and it did so in three specific ways, which I'm going to address in turn. First, with respect to search adequacy, the FBI and the Department of State failed to comply with this circuit standard that it conducts searches reasonably calculated to uncover all relevant documents. That standard is set forth in this court's precedent in Zemanski and in Lahr and in the case Lane. Under that standard, agencies are obligated to search in all locations where documents are likely to be found. And a prime example of where the FBI failed to do this is that it failed to search the files of the FBI agent who flew from the Los Angeles office to the UAE to interrogate Mr. Hamdan just weeks before he was put in the black site. Counsel, as I understand the detailed affidavit, I believe it was Mr. Hardy's declarations, in describing the FBI's record systems, it seemed to me that it was most likely that any documents that might be responsive to your request would have been indexed and entered into the databases that Mr. Hardy says have been searched. And what I'm trying to say is, what information did you present to the district court to suggest that there's another database out there that should be queried that is likely to produce responsive records? Great. So the FBI seems to take an extraordinary position in this case, and that is that it only needs to produce documents in response to FOIA that it deems are responsive and it deems are important. But that's not the standard under FOIA. That was rejected in the Supreme Court. You're not answering my question. It's really more of a, I don't know if logistical is the right word, but the question is what additional sources of information do you believe the FBI is obligated to search that wouldn't otherwise produce the records that you're requesting based on the showing that Mr. Hardy made to the district court as to how the Bureau keeps, maintains, and retrieves records for its own purposes? Well I have several responses to that. First of all, with respect to field offices, which we specifically asked the FBI to search, on page one of our FOIA request, and that can be found at ER 723, we asked the FBI to search the L.A. field office. It did not do so. Secondly, under the standards... Let's stop with that. As I understood Mr. Hardy's declaration, when investigations are opened, let's say in the Los Angeles field office, documents that are generated in the course of that investigation are indexed and entered into the databases that were searched. So why would a search of, I'll call it the nationwide database, or the worldwide database of the FBI, not be expected to reveal documents pertinent to your request that include the records of the L.A. field office? Well that gets back to my first point, Your Honor, which is that the central record system that the FBI claims contains all documents is not actually comprehensive. It only contains documents that certain field agents deem important, and we have identified through the search that the FBI did conduct that there are records that should have been produced responsive to FOIA's requirements and were not produced. Can I ask you, as I read Hardy's affidavit, he said that the only... that they don't have discretion not to enter it into the database... Your Honor, that's actually... If it involves subjects, suspects, and victims, and if it doesn't involve that, then there's some discretion on the part of the agents as to whether to enter it into the database, but as I read everything about this case, Mr. Hamdan would have been fallen into the category of agents not having discretion about whether to enter it into the database. Well, Your Honor, two points. Mr. Hamdan was not a subject of an FBI investigation after around 2000, and I can point to a record in the record that will be able to point to that. But secondly, the FBI was... a prime example of one agent who should have been searched and who wasn't searched is the LEGAD officers who reside in offices abroad. Those LEGAD officers, if you look at the Hardy Declaration, are not... they have no ability, whether with respect to subjects of an investigation or otherwise, they cannot even upload documents into the central record system. So their entire record systems are not subject to the central record system. That LEGAD, Gary Price, whose name is mentioned all over the documents, his records were not searched. The LA FBI field officer who flew to the UAE, his record systems were not searched. And if you look at the documents that the FBI did produce, they didn't produce... When you say that, though, as I read the Hardy Declaration, what that declaration says is that if the agent generates a report of investigation, which we know to be a Form 302, that the information from that form is entered into the database. And are you suggesting that that didn't happen, or do you have some showing that that didn't happen? But those are not the only documents that are responsive to this FOIA request. The agency is supposed to... is required to look in all locations where documents may reside, and that would include email files. They clearly did not search email files here. If you look at the Department of State, they did a comprehensive search of their email files. And those documents, as well as the documents that the FBI did produce, demonstrate that there are documents that fell outside of their own self-imposed, self-asserted manner of creating documents that FOIA... I thought Mr. Hardy said that they do enter emails, perhaps not all of them, but basically the agent decides whether the email is significant enough that, in essence, it takes the place or... I'm not sure I can describe, summarize what he said, but that there are emails that are indexed and entered into the system, are there not? There may be some, but again, that strict way in which they index documents are only a subset of the documents that they are required to produce under FOIA. Let me ask you the question this way, Ms. Hawkin, and I'm sure it probably works the same way. There are lots of emails that people send, in my experience, many of which are just totally inconsequential that deal with administrative issues and so on, as opposed to sort of substantive emails. And as I read his declaration, it's those substantive emails that are entered into the system. Although, yes, the agent, I guess, has to make a determination as to whether or not it's important enough in terms of memorializing the steps of the investigation to do that. So what are you asking the Bureau to do? Go back and search a hundred million email messages for more records? Is that what you're asking? Your Honor, the email files we consider a source, a record system that the FBI should have searched, given that there is indication in the record that many substantive emails that, you know, did not get put in the CRS but can be found in the email files should be searched. And where do I find that? I mean, I hear you saying that, but what I read in the declaration was, to use your term, substantive emails do get entered. So what evidence do you have that some other substantive emails that should have been entered were not entered? Well, we have documents from the LEGAS, which are not contained in the record systems that the FBI searched. There's specific emails from FBI LEGAS, Gary Price, that goes directly to the responsive issues that we're asking under our FOIA request. Not a single one of those was produced. Not a single email that the LA field officer, you know, communicated with the DOS was produced. There's a document in the record, ER 115, where the LA field officer is basically conceding that there were communications with the DOS that resulted in their understanding of what happened to Mr. Hobdon in Lebanon and what happened to him in the UAE. None of those have been produced. There's a wide gaping hole. Is it your position that other records do not memorialize the subject of those emails? In other words, did you not receive redacted or maybe full copies, I don't know, of interview notes that may have been generated, interview reports? Your Honor, going back to the standard of FOIA, even if two documents are similar, the agency is still obligated to search in a record system that has even duplicate documents if those documents are responsive to the request. We cannot leave it up to the agencies to produce only those documents that it deems important. So the answer to my question is, yes, we may have received some reports of interviews that were conducted, but we think there are emails that also relate to those interviews. Is that what you're saying? That's correct. There are, we believe, many, many more pieces of information responsive to the request. There's one set of interview notes, but we know that there have been communications back and forth between the LA field office and the UAE, as well as the LEGAD officers. None of those were produced. Can I go back for a moment? I'm not sure I got your answer. We agreed that if he was a subject, they would have had no discretion about putting it into the appropriate database, and you said he was not a subject? Well, Your Honor, even if he was a subject, for example, the LEGAD does not have authority to put anything into the central record system. But what about, we're not only talking about the LEGAD, you're talking about the FBI offices in a couple of cities in California. I mean, wasn't, he would necessarily have to have been a subject if what you're suggesting happened to him happened, and the government was, had knowledge of it. And they were even questioning him before, I think, he went back to the Middle East. Correct. And we have a document in the file that shows that he was no longer a subject of an open FBI investigation. They may have had some interest in him. They may have been following him. They may have been tracking him. But from what we can tell in the records, and it hasn't been disputed by the government, he was no longer a subject. And so that goes to the heart of the problem. The FBI cannot make its own unilateral decisions about what documents it's going to be producing in response to a FOIA request. It is this very situation that demonstrates the real hole and the departure the FBI is trying to make here from its obligations under FOIA. But if the agents, the FBI agents from these two Los Angeles offices were involved to the extent that the record suggests, wouldn't they necessarily have regarded him as a subject? I mean, are we playing with technical words that he was a subject in 99 to 2002 or whatever? And whatever investigation they were conducting then, may he was closed. But one would think that they would not have been involved subsequently unless he was a subject. Well, that's the thing, Your Honor. We can't get into the minds of the people who were responsible for putting documents into the central record system because we do have another location where we have found documents where the FBI failed to search. And the standards in the circuit is that where there are locations that are likely to have further documents, whether they're duplicates, whether they're similar, whether they're somehow maybe not what the government deems important, those record systems still must be searched. That's a very clear standard under the FOIA. Do we know, and maybe this question should be addressed to the Justice Department attorney, but how much of an effort would it be to engage in the additional search that you say should have been conducted? Right. As I mentioned, the Department of State was... No, I'm not talking about how the Department of State operates. I'm talking about the FBI. Right. So it would involve a keyword search of their email systems. And this is routinely done in discovery in civil cases. The FBI has made no mention of any burden that would come anywhere in their papers. They have not indicated that these records do not exist. And again, in civil discovery matters, this is a routine thing. So much happens over email now. To just completely exempt search of emails by the FBI would really be departing from FOIA's purpose. I guess one of the problems I'm having after reading the Hardy Declaration is that if it's important enough to the Bureau to memorialize in a form that can be retrieved, then by definition it goes into the central record system because it's important in other inquiries that the Bureau may be making for other matters that it's working on to know what has previously happened. And I guess implicit in your argument is a suggestion that somehow there are documents that were not produced for whatever reason because they didn't look for them. But the problem I'm having with the argument is that it's counter to what the agency says it is trying to do with centralizing its record systems. But, Your Honor, you have to understand the way that the agency maintains records are for their own internal purposes. They are not for the purposes of what they're obligated to produce in a FOIA case. I'm not sure that the purposes are contrary. I think what you're suggesting is that the agency would somehow design its systems so that it would be less compliant with an FOIA request. And as I read the Hardy Declaration, it's just the opposite. The systems are designed to maximize the agency's ability to retrieve information down the road when the requester within the agency may not even be aware of this prior investigation or what was memorialized, but it now contains information that may be relevant to something else that they're doing. And for that reason, there's an incentive on the part of the agency to design a system that is as fulsome as possible in order to help the agency perform its mission. And I'm not sure that's contradictory to what you're arguing they have failed to do here. I think it is contradictory, Your Honor, because I think that just the way that it has defined the way that it uploads documents, witnesses, suspects, and people involved in an active investigation, that is not what FOIA is limited to. We could have served a FOIA request to ask about the agency's personnel policies. I mean, absent them being withheld under a different exemption, we don't, FOIA is not limited to requesting information that the FBI, how their investigations are conducted or any core function of the FBI. Counsel Judge Gould, if I could interject, before your time's all gone, could you spend some time on the other issues? There are two, we've only been talking about adequacy of the search so far. And you also have issues on the, you know, whether the exemptions were properly explained and also whether there was a finding on segregability. You should touch on those. Yes, Your Honor, thank you for moving us along. I would ask Judge Tallman to, if necessary, add a minute or two to your time to make sure you can comment. So with respect to the exemptions, the FBI and Defense Intelligence Agency has sought exemptions under Exemption 1, 3, and 7e. I mean, I think the best way to understand our argument against what they did was to really look at the Department of State's Vaughn Index or declaration, which we think is quite good and is compliant with this circuit's precedent in Wiener in terms of specifically identifying information with hold, compare that to the FBI and DIA's declaration, and then realize that what the FBI and DIA have done is exactly what the court in Wiener determined was not lawful and was not entitled to summary information. The FBI's declaration does a document-by-document explanation of the documents, the withheld material. They provide things like the date, the recipient, some brief explanation of the information withheld. None of that is done with the FBI's declaration or the DIA's declaration. The FBI devotes some total of one paragraph of their 50-plus page declaration to the documents withheld under Exemption 1. And with respect to that description, they use the same exact information, same boilerplate language that they use for every single one, and they fail to identify by document what the harm of disclosing that information is. What is the national security harm? If you look at the language in Wiener for the declaration that was found deficient, it's almost identical to the language in the FBI declaration. I would point you to footnote 15 of the Wiener decision and just compare the two declarations side-by-side. You will see this is exactly the kind of declaration that doesn't comply with FOIA. Similarly, with the DIA... I thought the Wiener declaration was somewhat contingent and it said it may contain documents, information, or it may contain, and that that's what Wiener focused on. Yes, and Wiener did also focus on things like alternative explanations for why a piece of information is withheld or describing a document. That's also not allowed because you have to do a particularized explanation. You have to tailor it to the information withheld and that wasn't done here. With respect to the DIA, it's an even more egregious example where you have 27 documents withheld in full and each entry on the Vaughn Index has the exact same language, very limited, just repeating the statutory standards. I thought there were two that had slightly different language. There's actually, there's one document, so all of the 27 documents are withheld under Exemption 1 and the same language is used for the justification for Exemption 1. There's one document, Document 21, which also adds, and this is with respect to Exemption 1, different aspects of the executive order. For most of them, it's sources and methods. For one document, it's foreign government information, foreign relations. With respect to Exemption 1, that's the only difference. And even there, we don't believe that what they've provided is sufficient. If you look at the Williams Declaration, which is supposed to expound, it makes no more, it provides no more detail on any of the documents. It doesn't even mention, other than Document 21, any of the documents contained in the DIA Vaughn Index. And again, with respect to the DIA, there's a case, Physicians for Human Rights, which found that that very same, very similar Williams Declaration was found insufficient for that reason. Could you turn to segregability? Sure. So with respect to segregability, we would again point you to the Department of State. So we believe all of the three agencies failed to conduct the relevant analysis to demonstrate whether certain exempt portions of those documents should have been disclosed. And as an example of what they should have done, we would point you to at least one entry in which the Department of State did what we thought was a proper segregability analysis. And that is at ER 66. You'll see that there, the document in question, the DOS identified they did a line-by-line review. They determined that there was, in fact, some non-exempt portions of that document that could have been disclosed, but for the fact that it was intertwined with other aspects of exempt material, and they made the determination that the entire portion of that document could not be disclosed. That is the kind of analysis that neither the DIA nor the FBI did, and that matter for many of the documents that the DOS has withheld. Does it matter that the State Department's in a different business than the DOI, than the Defense Intelligence Agency? I'm sorry. It doesn't, in that procedurally, any agency, whether they're in the business of national security or not, can do the same analysis. They can look at the document, they can review it, and it's actually not any more burdensome than doing what they're required to do with respect to the exemptions. With respect to the exemptions, they're supposed to look at each document, provide some specific information, and give the court what it needs to do an independent assessment. For Exemption 1, that would be for under classification standards, under segregability, they could look and see, you know, whether there are exempt information that could be disclosed, and identify that information, or justify why it can't be disclosed. So it's no additional burden on segregability. Counsel, did the, am I correct, the District Court did not make a finding on segregability? That's correct, Your Honor, and that's the primary... Is that contrary to what our court said has to be done in Weiner? That's correct, Your Honor. Both in Weiner and before that in the Church of Scientology case, the Willamette case, all of these cases make very clear that the court has to do an independent assessment, document by document assessment, about whether the agency's segregability claims are valid. Okay. Oh, go ahead, Judge Ruhl. Well, I was just going to say, I haven't looked at Scientology, but in Weiner I know the court said that, but I wanted to ask, is there something different about that case involving surveillance of John Lennon on the one hand, and a case like this involving surveillance of someone alleged to be involved in terrorism, that is there still a segregability finding requirement? Yes, Your Honor, there is, and I would just point back to the fact that it's the same requirement that the court has to ensure that the government provides the court with the information that it needs to really assess the validity. We can't just take the government at its word. The court needs some information in order to determine whether the information that it's claiming is withheld actually falls into the very narrow exceptions that Congress provided. In many cases, the government has a different position on what falls into those exemptions, but it's ultimately up to the court to do that assessment, and it needs information. It needs basic information. If the agencies cannot provide that information through public declarations, the court can review those documents or ask for ex-party declarations to get the information that it needs to make that independent assessment. So that's regardless of whether we're in a national security case or not, and there are inspections that courts routinely use in national security cases, and so we think that the court is not without options. Okay, thanks, counselor. I took your time, but I appreciate it. May it please the court, I'm Thomas Byron from the Justice Department here on behalf of the government. I'd like to start, as plaintiff's counsel did, with the search question and begin by emphasizing this court's case law consistent with that of the D.C. Circuit, the Seventh Circuit, and others, which expressly makes clear that the question about the adequacy of the search is not whether the search actually uncovered every possible record that might be deemed responsive, but instead whether it was reasonably designed to identify the places where responsive records would be found. That reasonableness standard is in place because otherwise, if an agency were required to search every source of records throughout its many facilities and electronic systems, the burden would far outweigh any likelihood of actually identifying responsive records. Your adversary, plaintiff, has focused on e-mails of a couple of FBI agents out of particular offices and the FBI legate in, I forget which country, Lebanon or the UAE. How difficult, I mean, is it just a matter of pressing a button to find out whether or not there is some reference to the plaintiff or what happened to him in those, for example, e-mails? No, Judge Corman, it's not that simple. And first of all, I guess I want to make two points in response to your question. First of all, the specific answer to what I think you're asking is that it would require the individuals who were at the time located in those field offices tasked with those jobs that the plaintiffs have now told us they think are relevant. And remember, too, they didn't raise this argument until the reply on their own summary judgment brief, which was long after the FBI had completed its search many months earlier. And this is relevant in part because the e-mails that they point to were not known to the FBI at the time the FBI completed its search. They were produced by the State Department, which ran its searches later. It took a little bit longer. And so there's really no way for the FBI to have known at the time it did its search that there was any reason to believe that other record systems might produce responsive documents or would reasonably be expected to. So the point, though, is that it would require all of those people and all of those offices to take multiple steps to search the systems, both e-mail and hard copy. They've also asked for hard copy searches in various locations. And the reasonableness of the agency's decision to craft a search that's responsive to, that's designed to respond to plaintiffs' particular FOIA request has to be judged, first of all, at the time the search is conducted. Now, to be clear, the case law says at the time the search is completed, and that's to make clear that if in the course of the FBI's own search it uncovers documents in the CRS, for example, that suggest another source would have relevant responsive documents, it has to then go and do that. What it doesn't require is that after the FBI search has been completed, if another agency produces information months or years later, the FBI then has to go back and start over. That's not FOIA. That's not the standard under FOIA. Capitalist Judge Gould, if I could ask you on that. So why shouldn't it be required, even if a search is assumed to be reasonable when initially constructed, if another agency produces several documents showing communications with particular FBI personnel that relate to the FOIA request, then why wouldn't it be reasonable to expect the FBI to go back and do a supplemental search on those items? Well, Judge Gould, the reason that there's not an ongoing responsibility of an agency to revisit its search after the search has been completed is because this particular FOIA request is only one among thousands. For the FBI alone, Your Honor, over the last few recent years, between 18,000 and 22,000 FOIA requests are submitted to the FBI alone every single year. So once the agency completes its search, it has to move on to the next FOIA requests that are in the queue. Otherwise, by continuing to revisit old searches that had been completed, it would never turn to the more recent ones or they would be even further delayed. That wouldn't be fair to the other requesters. But the other point is that the case law is clear that the agency does have to take account of information it obtains in the course of its own search. So as I explained, if after the CRS search had been completed there were a reason to believe that something responsive that had been identified in that CRS search suggested another source that should be consulted or searched, the agency would have a duty to do that. That's not the case here. The case here is where many months later, another agency has completed its own search and responded to plaintiffs with some information that plaintiffs now tell us, long after the FBI search is done, may indicate some other sources that they want us to search. First of all, it's not a proper way to litigate. The plaintiffs waived that argument in the course of summary judgment briefing. But it's also not a proper way to conduct FOIA searches because it would never allow the agency to complete its project. Now remember, too, that plaintiffs can always make a new FOIA search. They could come back to FBI and say, we have these emails from the State Department that we found out about after you were finished with your search on our earlier request. We think you need to search for similar emails that may exist in these locations. And the agency would then have to determine what would be a reasonable search to craft as an adequate search under that response. And it's certainly not true, as plaintiffs here have argued, that the agency never searches anything other than CRS. It always depends, and the case was clear about this. It's a fact-specific inquiry based on the records the plaintiffs are seeking. And here the FOIA request that plaintiffs submitted clearly referenced the FBI's investigative activities. And therefore it was reasonable for Mr. Hardy-Kinclue, as he explained in his declarations, that the CRS, which is the repository of the FBI's investigative records, and the source the FBI itself looks to when it's conducting its investigative functions, was the most likely source to identify responsive records. And that's why that search was adequate. Now, plaintiffs in their argument today have not separately addressed the question of the State Department's search and the adequacy of that. If the Court has any questions about whether the State Department should have searched the Bureau of Political and Military Affairs, I'd be happy to address them. Otherwise, we'd stand on our backs. I just want to get back to the burden that you're suggesting. If you were to conduct a search, let's say, of the offices and the two Los Angeles offices for emails, how difficult would it be? I mean, I think your adversary suggests you just press a button and it'll throw up the information. I don't know much about how all this works, I have to confess, but I'm just trying to understand. Well, Judge Corman, I'm sure you've been… I mean, you suggest they could come back and make another request, but it would seem logical that if two FBI agents are sent from California to somewhere in the Middle East, that there might be documents in the two offices from which they came that would be responsive. And if all it involves is pressing a button with a particular name on it or whatever, why is that such a difficult task? Well, Judge Corman, it involves a great deal more than that, and I'm sorry if I didn't explain as fully as I might have in response to your question a moment ago. In addition to pressing a button, you would then get however many responses there are in the email system, and then those would all have to be reviewed. And that review takes time, not just by the individual agents but also by FOIA specialists at RIDS in the facility in Virginia where Mr. Hardy oversees a staff of, I believe he explained, a couple hundred people who do this full-time. This is their job. It takes an awful lot of work on the part of the FBI to respond to FOIA requests. That's assuming that there's anything… If you put in Mr. Hamdan's name and looked for emails in those offices, how many documents could it throw up? We don't know, Your Honor. There's no way to know that at this point. But the real question is, judging at the time the FBI conducted its search, was it reasonable not to go beyond the CRS and ELSR record systems at the time? And it was. The plaintiffs now come in and tell us that having drawn out this litigation or this litigation having been drawn out, I'm not blaming anybody, it takes time to conduct this stuff, that they've subsequently identified this additional information that they think requires the FBI to revisit its search. And that's not the way it works. But I want to address as well a couple of points you raised and that plaintiffs raised. One of them is whether there would be any emails in the CRS itself. And for one thing, we did produce emails that were in the CRS. So plaintiffs' assumption that there are none in the CRS is belied by the record in this case. We did release to plaintiffs some redacted emails from CRS. So that's not an issue. Plaintiffs also say that the LEGAT records, the Legal Attaché records, do not appear in CRS. But the Hardy Declaration explains that they do, that when CRS indexes, the ACS I believe it's called, were consolidated in the mid-1990s, they did include the LEGAT records, the LEGAT indexes at the time. So plaintiffs have no basis for their argument that LEGAT records would not be identified as a reasonable construction of the search that was designed, and that's why it was adequate. Do you agree, by the way, that Mr. Hamdan was not a subject? Your Honor, I don't think it's relevant, actually, if I may say that, because there are many index terms in CRS that turn on, I'm sorry, that are indexed, records that are indexed based on information that is other than a subject. Witnesses, for example, are a frequent indexing basis in CRS, and this is a reflection of the investigative function. Again, the FBI depends on CRS to make available to its agents in their investigative efforts the records that are relevant to those investigations. And by the way, if plaintiffs' theory were correct, we would have found presumably no records past a certain point, and I think that the number of documents that are explained in the Hardy Declaration that we did produce from FBI as a result of this search belies that assumption. What about, I think she specifically mentioned, Special Agent Gary Price? Your Honor, if I remember right, I think plaintiff's argument is that Gary Price was the Legat, is that right? Yes, that was my understanding of what Ms. Logue said. Right, right. I'm sorry, Your Honor. I thought she said that no documents relating to Legat Price were produced. I don't recall whether there was any document that may have originated from him, or if plaintiffs would have any way of knowing that, frankly, Your Honor. But I think you told Judge Korman a few minutes ago that when the FBI converted to the automated system in 1995, that Legat records are now included in the CRS. Yes, Your Honor, that's right. So if Price generated any documents that would otherwise be relevant to inquiries, it should have been indexed and included. I think that's right, Judge Korman, and that's in fact my very point, so maybe I misunderstood your question, but my belief... I'm not sure I understood Ms. Logue's... I mean, that was the representation that she made to us, but I haven't seen the document, so I don't... Right. Well, Your Honor, I don't think Ms. Hawk knows for a certainty that there are no records released that originated with Mr. Price or with any particular agent. Remember, the records themselves don't always identify who was associated with them, who uploaded them, who submitted them to the system. I don't know the answer to that myself, Your Honor, so I'm a bit at a loss in responding to the allegation or the argument that there are none. But the point is this. Had some results of the original search that the FBI actually itself conducted indicated that there was a need to go beyond the CRS and the ELSR, the FBI would have done so, and the plaintiffs now seek to come up with additional reasons based on State Department documents, based on their argument in the reply brief in summary judgment motion briefing. But none of those were reasonably attributed to the FBI in its search considerations at the time it was conducted. Counsel, Judge Gould, if I could ask you a couple of questions on that, please. And the part of this case that bothers me is whether the FBI should have done a search of the offices and the files of the specific agents who went to talk with Mr. Hamdan overseas. So when he makes his FOIA request, wouldn't they pretty easily be able to tell what agents and from what offices went to see him overseas? Whether the agency could figure that out, I don't know. But in this case, of course, the plaintiffs did identify, I believe in their request, that a couple of agents did so. So there's no doubt that the agency, that the Bureau could identify those agents. But the question then is what to do about it. And was it reasonable for the FBI to determine in crafting a search responsive to the entirety of the request that those agents' records or records that they produced or worked on would be in CRS and Mr. Hardy experienced that it was? That's the question I've got is, is that a reasonably crafted search that doesn't call on an office to look in its files for those people? And part of the reason is that in many agencies, things happen that if they come to light, I don't mean in the FBI, maybe it never happens there. But there are some federal agencies where things happen at one level that if they come into the light later, people at a higher level take some action or do something about it. And part of the purpose of a FOIA request seems to me should be to get information identified so responsible people in the agency can look at it. Well, Your Honor, I'm not sure how that translates here, but I'll turn to the first part of your question if I may, and that is whether it was reasonable for Mr. Hardy to explain, whether he adequately explained that they crafted a reasonable search. And I think here the reason we think it was reasonable, and the question is, this reasonableness requires a balancing, after all, of the burden on the agency. And we're not saying it was an undue burden, such that the plaintiffs have pointed to this other doctrine that's not in play in this case. But the burden on the individuals, the burden on the institution all has to be balanced against the likelihood that responsive documents that would not otherwise be located would be found by doing additional searches. And that's what Mr. Hardy explains is really the whole purpose behind CRS, is that if you're looking for investigative records, records of the agency's investigative functions, you're most likely to find those in CRS. Now, if there's some reason to believe about a particular request that additional records might be found elsewhere, the agency will, of course, take those steps. For example, plaintiffs' counsel today argued that if a request sought information about administrative matters rather than investigative functions, the CRS would not be a reasonable search, it wouldn't be an adequate search. That's an argument that makes sense to me, at least, and it seems to me that if a FOIA request, and again, these are all fact-specific based on the specific request made to the agency, if a FOIA request says, we're not looking for investigative matters, we're looking for the agency's internal handling of personnel matters, the agency would probably have to do a different search than it did here. But this request was about investigative matters. And therefore, the reasonableness of the search was amply explained by Mr. Hardy and his two declarations on the record. I hope that answers the question you had, Your Honor. I do want to turn, if I may, to the arguments about the specific withholdings, both under Exemption 1 and Exemption 3, and under Exemption 7e. I noticed there was not a lot of specific argument or questions about those withholdings, so I would say only this about the Wiener decision by this court in, I think it was 1991 or 92. Judge Corman, as I think you pointed out, there were a lot of problems that the court identified with the declaration in that case, and the contingent language, which we quoted in our brief, was a very large part of it. The boilerplate aspect of that was the problem that this court identified, that identical language had been used in that case and in a D.C. Circuit case, I believe it was King, and the court was concerned that there was no differentiation, no case-specific distinction between those responses. Not so here, but I would also say that to the extent plaintiffs have been able to isolate specific language that's used with respect to multiple documents or pieces of information in the record, there's nothing surprising about the fact that, as the D.C. Circuit explained recently in the Larson case, the agency, whether the DIA or the FBI, would use... I'm sorry, I see my time's expired. I'll just finish the thought. I let her run over. Thank you, Your Honor. ...the agency would use similar language to explain similar harms that are likely to result from disclosure of similar information. That's not surprising, especially in the area of national security, where in many respects the response is necessarily constrained and the agencies are precluded from getting into greater detail. That raises, it seems to me, the question that plaintiffs have also argued in their briefs but not at oral argument today, the idea that in-camera inspection... I'm sorry, plaintiffs did argue today that in-camera inspection is appropriate if the public record cannot fully explain the reasons for withholding. The government has not resisted in any way in-camera inspection of the documents that are at issue, and indeed, if this Court would like to see them, we would, of course, make them available for in-camera inspection on appeal. We do believe that the public record here amply explains the reasons for withholding on a document-by-document basis. There are Bates page references in the declarations that explain why specific information found on specific pages must be withheld for specific reasons.  to satisfy the requirements of this Court and indeed of other courts as well under FOIA. If the Court has any questions about segregability, I'd be happy to address that as well. Well, I have a question about it, and that is, don't we have a precedent that we as a three-judge panel would have to follow that would say there should be a finding of fact on segregability so that here, if there isn't, don't we have to send that aspect of the case at a minimum back to the district court? Judge Gould, the answer is yes. This Court's precedence and that of other circuits as well is clear that district courts are required to address segregability and make a finding that no non-segregable information was withheld. I think I've got that right. I'm sorry if I've mangled it. That finding was not made here. However, as we explained, it is clear that the parties, both sides, briefed this issue fully, that the record does include declarations that address segregability and that explain with sufficient specificity that no non-segregable information had been withheld, that the segregability process was conducted properly. And we do think that, therefore, any error below was essentially harmless in that respect. Now, Judge Gould, you're right. The case law is clear. If there were to be a determination by this Court that that failure by the district court was nevertheless fatal, any remand should, of course, be limited merely to allow the Court to review the record and make a conclusion about segregability if needed. I'll also point out, however, that the Juarez decision in the D.C. Circuit recently, well, not recently, a few years back, addressed a similar circumstance and concluded, based on the panel's review of the record, that the declarations adequately did explain the segregability and justified the withholdings on that basis. And, therefore, we believe that option is open to the Court. If you wish to undertake it, we don't think it is. But isn't that option permitted by Ninth Circuit precedent so that we, as a panel, couldn't do that unless I'm missing something, that we could say, gee, we think that would be a good idea if we could, but only an NBank panel could change the Ninth Circuit precedent on this? Oh, Judge Gould, I'm not suggesting that it would need a change of precedent or that this Court would be flouting precedent to take that step. I don't think that's right. To be sure, the precedent requires a district court to make that finding. And here, the district court didn't do so. We're not disputing that. But that's true in the D.C. Circuit as well. And the Juarez panel concluded that in order to avoid unnecessary prolongation of the litigation, that remand for that purpose would be essentially meaningless and needless because of the fact that the record there was sufficient. I don't think that question or I don't think that option has been precluded by this Court's prior precedent, and therefore I don't think it would require NBank consideration to take that step. Mr. Byron, let me challenge that statement in this regard. Juarez, as I recall, involved 16 documents, and they were apparently available to Judge Sentell's panel. Oh, no, Your Honor, they were not submitted in camera. They were not? No. So the Court made the determination solely on the basis of the declaration? That's my recollection, Your Honor, yes. All right. I think that's clear in the opinion. If I've misremembered it, I apologize. But that's my recollection. Okay. If the Court has no further questions, we believe that the briefs adequately explain why the District Court properly granted summary judgment to the jury. Counsel, I'd like you to address one other point that may be on your side of the case. It relates to whether the descriptions by the DIA of how sources might be compromised, whether those are adequate for the exemption number one. And the question I have is, what's the government's position as to whether giving more detailed explanations about compromisability, if I can coin a phrase or a word, would that, in the aggregate, tender damage information? Because I've read somewhere that in intelligence, little bits of information get put together to support bigger bits of information. Yes, Judge Gould. And that's a very significant concern for elements of the intelligence community, including the DIA. And the Williams declarations, there are two of them in the record, do explain that she's limited in the amount of public information she can provide because of the DIA's mission and the sensitivity of the classified information it deals with. Now, whether there's additional information that could be provided, for example, in camera, if the court concluded that there wasn't a sufficient explanation, that's a possible middle ground, although we always, of course, try to avoid creating additional classified information or disseminating classified information additionally when it's not necessary and the district court here determined there was no need for that additional step. And I'll also point out, Judge Gould, that the classified information withheld on the basis of source identification rationale was also withheld under Exemption 3, and the DIA's authority under the National Security Act to withhold and protect sources and methods is coextensive for those documents and therefore provides a separate and independent ground for the withholding that's adequately addressed. I know plaintiffs didn't address in their argument today the issue they've raised about whether the Congress's change in the statute in 2004 indicated a retrenchment from the Supreme Court's decision in Sims. We'd be happy to address that question if the court's interested. Well, would our precedent, and I'm thinking of Weiner, although it's quite a different case, but would that permit us to say that a DIA statement that sources would be compromised is adequate without more? Well, first, Judge Gould, I think it's not fair to characterize the Williams declarations as saying only that a source would be compromised without more. There is an explanation about the harms that would result from the identification of sources, and there's a lot of case law in this court and in the D.C. Circuit and the Second Circuit, among others, that all make clear that in the national security context there's a great deal of deference due to the expert judgment of the executive branch intelligence community who is able to discern those harms much better able, as you point out, because of the mosaic nature of intelligence gathering. And I think one of the cases says that the courts are entitled to presume that foreign counterintelligence agents are zealous ferrets in their efforts to identify even the smallest bits of information that they can use then to undermine the intelligence efforts of the United States. And so those are certainly the considerations that this court and others have looked to. Now, I think Wiener was a case where the court was understandably concerned about the justifications on the public record in that case. And remember, in that case, there was classified information. Of course, Exemption 1 had been invoked by the FBI as a basis for withholding information there. The case was remanded. There were some further disclosures, some further withholdings. It eventually settled. I'll just say that we don't think there's a real distinction. The FBI, after all, is an element of the intelligence community, as is the DIA, the CIA, NSA, and others. And the considerations about protecting sources are paramount for all of those IC elements. We don't think there's a reasonable distinction there. Thank you, Your Honor. Thank you, Mr. Barr. Thank you. Ms. Haack, I'll give you a couple minutes on rebuttal. Thank you. So, Your Honors, I think, if I can count them, I have about six or seven points to make in response. The first has to do with the search adequacy issues. Just to respond, there are actual documents in the FBI's own production that indicate that the LEGAD officer, for example, should have been searched. ER-388 is essentially a memo from the L.A. field officer specifically requesting the LEGAD in the UAE to provide a, quote-unquote, official response to what is going on with Mr. Hamdan in the UAE because his brother, Hossam Hamdan, was calling to find that information. That's clear indication in the record that the FBI had at the time that they did the search. And as my opponent has mentioned, a search must be determined whether or not it's adequate at the conclusion of the search. And at the conclusion of that search, there were definitely indications in its own record that further sources should have been searched. But that gets to the point, I think, that Mr. Byron just ended on and Judge Gould was questioning him about, and that is the disclosure of bits and pieces in this arena of national security as to how we come by information. And it seems to me that that's what you're asking for with this particular document. No, Your Honor. On that issue, and globally, let me just say, we're not asking this court to order the release of any document. On the last point that he's making, it's not a search point. It's about the adequacy of the declarations. I read in the declarations, did I not, pages and pages about concern in national security investigations about leaking pieces of information to our adversaries that they can piece together until they have a mosaic of what our capabilities and vulnerabilities are in these kinds of investigations. Well, two points in response to that. The first is to this issue of the deference that, you know, agencies that are engaged in national security, they do get deference, but only after they have gone through the initial steps of identifying if they do believe that this piece of information leads to that mosaic. They need to be able to identify that specific document, that specific withheld information, and say this will lead to that, to this information supporting that mosaic. That was not made with respect to any particular document. And if you look at the paragraph that the FBI has set forth to do all of its Exemption 1 withholdings, that argument is absolutely not made. The mosaic argument is not made. I may be confusing declarations from the DIA. Right, and I think the reason you're... But I think the concern is the same, is it not? I mean, I take Mr. Byron's point that the FBI is as much a part of the intelligence community as the DIA. But you can't rely on argument of counsel. It has to be in declarations attested to... I'm looking at the record. It's the same exemption, and it's the same concern, is it not? If it is a concern, it has to be made with respect to a specific document, and the showing must be made. That's the question. That's the bit and pieces concern that I started with. At what point do we have to defer to the agency's judgment that we can't tell you anything more about such a document, even if we acknowledge that it exists, and maybe they are, maybe they're not, because to do so would harm sources and methods of information? And what more do you believe the agency needs to say at that point in order for us to say, well, there's no evidence of bad faith here, and we have to defer when that exemption is invoked for that reason? Well, Your Honor, with respect to this case and the documents at issue here, we're just not there yet. Again, I would point to the Department of State declaration where they were able to identify, by the specific information they're trying to withhold, why that would lead to something like this mosaic argument. In this case, that simply was not done. And under this court's precedent in Wiener, it has to be done before you even get to this issue of deference. And again, the mosaic argument was not made with respect to the documents at issue here. Okay. Getting back to the search adequacy issues. Counsel, you're two and a half minutes. I'll give you one more minute, but if you have seven points, you better get to them. Okay. I think just to get to the point about this issue about whether the leak-out files were included in the central record system, I think it's a little bit more complicated and maybe I can break it down. So the FBI declaration says the leak-out is a part of the system, but if you look at ER 39, paragraph 19, there's a list of agents who are, you know, through their deference, where the individual is not a subject of an investigation. Leak-outs are not included amongst those FBI agents who have the discretion to upload documents to the CRS. And so in this case where, and I can point you. Where did you read that? I didn't. Sure. It's ER 239. And what is it? It's the FBI's second hearty declaration. Second declaration? Yeah. Okay. And paragraph 19? Paragraph 19. All right. So just to back up to provide the whole story, as we mentioned, Mr. Hamdan was not a subject of an FBI investigation. The record site for that is ER 606 through 608, which indicates that his FBI file was closed at that time, and I think that was back in 2000. Anything after that, it's just a general interest in Mr. Hamdan that he gets reported on by the FBI. Okay. Now fast forward to. Counsel, let's go back to the point you were making. Where in paragraph 19, I'm looking at ER 605, if I'm in the right place. No, sorry, ER 239. You said the second declaration? Yes. It's the declaration dated August 10, 2011. I don't have the last page in. Maybe I've got the wrong one. Yep. Sorry. I had the wrong. It's December 12th. December 21st. 21st. Yep. Okay. Now I'm at paragraph 19. Okay. And what was your point there? So with respect to an individual who does not have an open FBI file, who is not a subject of a request, a LEGAT is not amongst the agents who has the ability to put any records into the CRS. Where do I find that in paragraph 19? It identifies the agents who do have the ability to upload documents to CRS. But aren't the LEGATs special agents of the FBI? No, Your Honor. They're different than a special agent. They're a legal attache, and they're not, you know, what this. They're not sworn special agents of the FBI? I don't believe that's correct. And this declaration does not include them amongst the list of people who can upload documents into the. I'm not sure that's right, counsel, but I can't point to anything that I've read so far that says that. That's my understanding, and that's a separate reason. I think they're civilian employees of the FBI who are sent to our embassies to serve as the LEGAT. Is that it? Is that what that is? They might be special agents who are sort of posted at the agencies to serve as legal attaches. That may be, but at the very least, the FBI, because it's a burden to demonstrate that it has adequately searched for documents, at the very least, the FBI should be required to clarify that. But your position is, assuming that we're right, that a LEGAT is a special agent of the Federal Bureau of Investigation, then why does Paragraph 19 say operating as a LEGAT and conducting whatever they do in foreign countries, that they wouldn't be entering anything into CRS? I don't read that in Paragraph 19 at all. But that's an assumption that we don't have the evidence to make here. I can't even get to the inference that you're asking me to make from the language that I'm reading in Paragraph 19. What I'm pointing to in Paragraph 19 is it identifies the specific individuals who can upload documents to CRS. The LEGAT is not mentioned there. Special agents and supervisory special agents. But if the LEGAT is a special agent, then he is mentioned because it talks about FBI special agents. But, Your Honor, I believe that's an assumption that we cannot make unless the FBI makes its showing. Well, I understand your argument. I don't find that paragraph to support the argument you're making, but I hear your argument. Counsel, you're way over. I think I'll give you one last sentence if you want to close, but I've let you go on quite a bit. So I would just close by referring the court to the tax analyst case, which defines the documents that an agency is required to produce in response to a FOIA request. That involves documents that the agency created or obtained and has in its possession at the time that the request is made. And that is the universe of documents. Not just the documents that an agency has deemed are important because that would be a huge loophole that this court should not allow in the FOIA case. Thank you, Your Honor. Thank you very much. The case just argued is submitted. Mr. Byron, if you will just stand by, I will have Mr. Brown come out if the panel needs to ask you anything about anything in camera. All right. We are adjourned.
judges: Korman, Gould, Tallman